**SOUTHLAND BEAUTY SHOPS, INC.,**
Appellant,

v.

**Gladys FOREMAN et vir, Appellees.**

No. 13289.

Court of Civil Appeals of Texas.

Houston.

Sept. 25, 1958.

Rehearing Denied Jan. 22, 1959.

Vinson, Elkins, Weems & Searls, Judson R. Wood and B. Jeff Crane, Jr., Houston, for appellant.

Sullivan, Haynes, Green, Crouch & Pacetti and Kenneth M. Pacetti, Houston, for appellees.

BELL, Chief Justice.

This is an appeal from an order of the district court overruling appellant's plea of privilege to be sued in Bexar County.

Appellees sued appellant under the name of "Dollar Wave Shop." Actually the appellant is Southland Beauty Shops, Inc., a corporation with its principal office in Bexar County. In their petition, appellees alleged that on April 20, 1957, Mrs. Foreman obtained a cold wave on her hair from the appellant's agent in Harris County. They alleged negligence generally on the part of such agent in giving the cold wave, which negligence they alleged to have proximately caused an irritation or infection about the scalp and ear of Mrs. Foreman. In response to the plea of privilege filed by appellant, appellees filed their controverting affidavit, again stating their cause of action generally with no specific acts of negligence being stated. Appellant excepted to this defect in the controverting affidavit, and appellees filed an amended affidavit in which they specify the following acts of negligence:

1. Appellant's agent failed to question Mrs. Foreman as to whether she was allergic to any chemicals which might be used in administering the cold wave.

2. Appellant's agent failed to make tests to determine whether Mrs. Foreman was allergic.

3. Appellant's agent administered a mixture that was too strong, which the agent knew or should have known.

4. Appellant's agent, after being informed by Mrs. Foreman that the solution, when it was applied to her head, was burning and paining her, failed to take any action to remove the solution or administer some counteracting solution.

5. Appellant's agent administered an excessive amount of solution or an amount in excess of what was necessary under the circumstances.

Appellees sought to maintain venue in Harris County under Subdivisions 9a and 23 of Article 1995, R.C.S.1925, Vernon's Ann.Civ.St. art. 1995, subds. 9a, 23.

▆ In order to maintain venue in a county other than the residence of a defendant under Subdivision 9a, a plaintiff must establish by a preponderance of the evidence that an act of negligence, which was a proximate cause of the injury, was committed in the county where suit is brought by the defendant or those for whose negligent conduct he would be legally liable.

▆ Subdivision 23 particularly deals with suits against corporations. Appellees rely on that part of the statute providing that suit may be brought against a corporation in the county where the cause of action or a part thereof arose. To be able to maintain venue in a county other than that where the corporation has its principal office under this provision, a plaintiff must prove he has a cause of action arising in whole or in part in the county where suit is brought. He must establish by a preponderance of the evidence a negligent act by the defendant, or agents, servants or employees of a defendant, committed in the county where suit is brought, which is a proximate cause of a plaintiff's injury. Victoria Bank & Trust Company v. Monteith, 138 Tex. 216, 158 S.W.2d 63; Rogers v. Fort Worth Poultry & Egg Co., Tex.Civ. App., 185 S.W.2d 165.

The trial court heard testimony and concluded appellees had established a cause of action arising in Harris County and overruled the appellant's plea of privilege.

Appellant contends that the evidence conclusively shows that the irritation and infection suffered by Mrs. Foreman was because of an allergy to some ingredient contained in the solution and therefore there is no legal liability on the part of appellant.

We must review the testimony.

Mrs. Foreman testified that on April 20, 1957, she went to appellant's place of business in the Stewart Building in Houston. She had been going to this shop since about 1948. She had never previously had any reaction or injury from the solutions that were used in the past. The wave she had on April 20 "was something different" from the type wave she had previously had. The wave was recommended by the lady in the beauty shop who takes the appointments. When the solution was put on her head, "There was a horrible burning." She told the operator of the burning and the operator told her it was because of the nature of the solution. The solution poured down into her ear and "burned it horribly." She kept complaining, but the operator said it would be all right. This had never happened before. The fumes burned her eyes. She, on the following Tuesday (the incident occurred on a Saturday) went to her doctor who did nothing for her. She had previously called the manager of the shop about the burning. On Wednesday she went by the shop, and the manager sent her to Dr. Kearns. Mrs. Foreman did not know the name of the permanent waves she had previously gotten. The burning was all over her scalp and in her ear. The ear and scalp were red. She had not gotten a permanent wave at the shop in several months but had gotten some home permanent waves. She got the home permanent solution at a grocery store. She never had any trouble from these home permanents. After she had gotten the wave on April

20, she told the operator she was pleased with it. So far as Mrs. Foreman knew, she was not allergic to any sort of preparation used in giving permanent waves. Mrs. Bigelow, the manager of the shop, knew Mrs. Foreman had been getting home permanents. Mrs. Foreman complained to Dr. Kearns about her scalp and ear. She later was sent by Dr. Kearns to an ear specialist, Dr. Janse. Prior to this occasion Mrs. Foreman had never had any skin irritations or eruptions, except on one occasion she had a reaction. The operator at the shop told her the solution was supposed to burn. It seemed to her like more solution was used than previously.

Mr. Foreman testified to the redness about Mrs. Foreman's scalp, neck and ear when she came home. She stated to him there had been burning since she got the permanent wave. He examined Mrs. Foreman, and her neck, head and ear were irritated. Prior to this time Mrs. Foreman, to whom he had been married 27 years, had never complained about any such irritation. He had never noticed anything of this kind, though she had a reaction to penicillin once.

Mrs. Wooster, the operator who gave Mrs. Foreman the permanent, stated she gave her the "Realistic Cold Wave." Mrs. Bigelow, the manager, told her to give this wave. Mrs. Foreman was asked, but did not remember, the type she had been receiving. Mrs. Foreman made no complaint of any burning at anytime and in fact told the witness she liked the wave. Mrs. Foreman did not tell the operator she was allergic. The operator did not ask her if she was allergic to the cold wave because she knew Mrs. Foreman had been having cold waves done at this shop previously. The same method of giving the cold wave was employed April 20 that had previously been employed. No more solution was used than previously. When Mrs. Foreman came into the shop the following Wednesday, Mrs. Bigelow offered to shampoo her hair and use some kind of antiseptic. Mrs. Foreman said she did not have time. Mrs.

Wooster also testified the cold wave solutions can cause a reaction if a person is allergic to it or has a sore, but she denied this one of April 20 did. The witness had never seen a person who had a reaction.

Mrs. Bigelow, the manager, testified she had known Mrs. Foreman some years and Mrs. Foreman had been coming to this shop. On April 20 Mrs. Foreman had the same cold wave she had been having at the shop. It was the "Realistic" cold wave. This had been used at this shop about 10 years. The solution comes in plastic bottles, and each contains enough for only one permanent. Mrs. Foreman made no complaint to her on April 20, but in fact when she left the shop told her she liked the permanent. Later Mrs. Foreman called her about the irritation. Mrs. Foreman came by the shop the following Wednesday, and Mrs. Bigelow told her to go see Dr. Marshall, with whom Dr. Kearns was associated. Mrs. Foreman had never told Mrs. Bigelow of any allergy to a cold wave solution.

Mr. Snell, the general manager for appellant, testified he had been in the beauty shop business 20 years. The type of cold wave given Mrs. Foreman had been in use since 1943. The basic chemical in a cold wave is thioglycolic acid. About 80% have ammonium thioglycolic acid. There is no basic difference in the chemicals used in the various named brands of cold wave. During 1957 Dollar Wave Shops gave about 22,000 "Realistic" cold waves. He had seen a cold wave allergic reaction. The reaction appears two or three minutes after the solution is applied. There are those who have allergic reactions, and in discharge of his moral responsibility, he refers such cases to a physician if the client desires to see one. In 1957 five or six people in Houston and six or seven in San Antonio were referred to a physician.

Dr. Kearns testified that Mrs. Foreman came to see him and on examination he found the neck, ear and scalp irritated. The condition of her scalp showed she had

dandruff. She developed small boils in her ear. There is no connection between the onset of dandruff and thioglycolic acid. There could be a connection between the irritation he found in the ear and the acid. He could not say, however, there was any connection between the boils and the acid. He knows of cases where persons are allergic to cold wave solution. Such persons have such irritation as initially appeared on Mrs. Foreman's neck and ear. The irritation on her head could be of the same type as on her neck and ear, but not necessarily so. He testified that if thousands of people have no reaction from the cold wave solution and a relatively few do, those few have an allergy. He further stated if the condition he found in Mrs. Foreman was related to the cold wave solution, she had an allergy because very few people have any reaction from cold wave solution. A person can suddenly become allergic to something. If a person had been having cold waves without any reaction and she had another cold wave and developed irritation from it suddenly, the witness would say she was allergic to it.

There is serious question in the mind of the court as to whether there is any evidence establishing the acts of negligence alleged in the appellees' controverting affidavit except the one where it is alleged that appellant's agent was negligent in not taking steps to counteract the effects of the cold wave solution after Mrs. Foreman complained that the solution was burning her horribly. It is, however, unnecessary for us to pass on those questions because if one ground of negligence is established and such act proximately resulted in injury, this is sufficient to hold venue in Harris County where the act occurred.

We may assume, without deciding, that Mrs. Foreman had an allergic condition. This to our minds is immaterial on the issue of negligence in not taking steps to counteract the effect of the solution once it was discovered that it was causing injury.

Mrs. Foreman's testimony shows that immediately upon the application of the solution her scalp, her neck and her ear where the solution came in contact with her began to burn horribly, and she made complaint to the operator. The operator did nothing and told her it would be all right, that the solution was supposed to burn. When the burning continued, Mrs. Foreman made further complaint, and still nothing was done. We recognize that this testimony was denied by the operator and the shop manager, but this merely raised a fact issue that was determined by the trial court adversely to appellant. The doctor testified that the condition he found could have been caused by the cold wave solution; that the cases he knew of where cold wave solution had caused the reaction present the same type of irritation. Appellant urges that this ground of negligence is not established because the damage, if any, was done on application and also there was no evidence there was anything that could counteract the effect of the application.

■ We think in the light of common experience a trier of the fact could conclude at least the effect of the solution could be minimized even though complete relief might not be given. Too, we think the trier of the fact could conclude in the light of common experience that there were things that could be done to counteract the effect of the solution. It is a matter of common knowledge that the effects of acids may be minimized by counteracting measures. As a matter of fact the manager of the shop on the following Wednesday recognized something could be done when she suggested a shampoo and the use of an antiseptic.

■ The evidence may not be strong, but there is evidence supporting the contention of negligence, and the trial court believed that evidence. This is all that is necessary.

The judgment of the trial court is affirmed.